UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KURT PAUL BERGLAND,

        Plaintiff,

    v.                                     Case No. 19-cv-1181-pp

KILOLO KIJAKAZI,

        Defendant.

## ORDER AFFIRMING DECISION OF COMMISSIONER

On August 15, 2019, the plaintiff, represented by counsel, filed a complaint seeking review of a final administrative decision that found he was not "disabled" within the meaning of the Social Security Act. Dkt. No. 1. The Social Security Administration's Appeals Council denied review, making the Administrative Law Judge's (ALJ) decision the final decision of the Commissioner. For the reasons explained below, the court will affirm the Commissioner's decision.

## I.    Introduction

### A.    Initial Claims

The plaintiff filed an initial claim for disability benefits on March 23, 2016. Dkt. No. 8-4 at 2. Ten weeks later, the plaintiff filed an initial claim for disability insurance. Id. at 12. He alleged onset dates of February 1, 2016 for both claims. Id. at 2, 12. Concluding that he was not disabled within the meaning of the Social Security Act, the Social Security Administration initially

1

denied the plaintiff's claim for disability benefits and supplemental security income on July 25, 2016. Dkt. No. 8-4 at 11, 21; Dkt. No. 8-5 at 2. On March 15, 2017, the Administration denied the plaintiff's claims on reconsideration. Dkt. No. 8-4 at 41, 60, 62, 63; see also Dkt. No. 9 at 4.

B.    The ALJ's October 16, 2018 Decision

On April 26, 2017, the plaintiff filed a written request for a hearing in front of an administrative law judge. Dkt. No. 8-5 at 12-13. On May 31, 2018, the plaintiff appeared at the hearing with Attorney Amy Hetzner. Dkt. No. 8-3 at 16. Both the plaintiff and Vocational Expert (VE) Catherine Anderson testified. Id. at 38, 39. ALJ Michael Balter issued his decision on October 16, 2018. Id. at 13. He found that the plaintiff "was 51 years of age at the alleged onset of disability," id. at 21, and "ha[d] at least a high school education," id. at 26. The ALJ observed that while the plaintiff had worked as a teacher and principal, id. at 21, he had not engaged in substantial gainful activity since the alleged onset date, id. at 19. The ALJ concluded that the plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from February 1, 2016, through the date of this decision." Id. at 27. While the ALJ conceded that the plaintiff had severe impairments, id. at 19, he concluded that the plaintiff (1) lacked an impairment or combination of impairments that met or medically equaled the severity of a listing, id. at 19; (2) had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with nonexertional limitations, id. at 21; and (3) could perform jobs that existed in

significant numbers in the national economy, id. at 26. On July 11, 2019, the Appeals Council denied review. Id. at 2.

C.     Bergland v. Kijakazi, Case No. 19-cv-1181-pp

On August 15, 2019, the plaintiff, still represented by Attorney Hetzner, filed a complaint seeking this court's review of the ALJ's October 16, 2018 decision. Dkt. No. 1. On January 6, 2020, the plaintiff filed an opening brief. Dkt. No. 9. On March 19, 2020, the Commissioner filed a brief. Dkt. No. 13. Two weeks later, the plaintiff filed a reply brief. Dkt. No. 14.

The plaintiff asserted in his opening brief (1) that the ALJ ignored objective medical evidence that showed the plaintiff's sleep apnea causes complications to other body systems, dkt. no. 9 at 11; (2) that the ALJ improperly cherry-picked medical evidence to find the plaintiff only moderately limited in his ability to understand, remember and apply information, id. at 13; (3) that the ALJ ignored medical evidence and improperly relied on non-workplace interactions to find the plaintiff only moderately limited in his ability to interact with others, id. at 16; (4) that the ALJ ignored medical evidence and improperly cherry-picked non-medical evidence to find the plaintiff only moderately limited in his concentration, persistence and pace, id. at 19; (5) that the ALJ improperly weighed the evidence in determining the plaintiff's RFC, id. at 21; (6) that the jobs the ALJ concluded were available to the plaintiff are inconsistent with the limitations in the ALJ's RFC determination, id. at 26; and (7) that the ALJ failed to fully account for the VE's testimony

3

regarding jobs available to the plaintiff based on his physical limitations, id. at 27.

## II.    Analysis

### A.    Standard of Review

When the Appeals Council denies a plaintiff's request for review, the ALJ's decision constitutes the final decision of the Commissioner. Gedatus v. Saul, 994 F.3d 893, 898 (7th Cir. 2021). Section 405(g) of Title 42 limits the court's review; the court will reverse only if the ALJ's decision is not supported by substantial evidence, is based on legal error or is so poorly articulated as to prevent meaningful review. Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." Id. (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). A decision denying benefits need not discuss every piece of evidence; however, remand is appropriate when the ALJ fails to provide adequate support for the conclusions drawn. Jelinek v. Astrue, 662 F.3d 805, 811 (7th Cir. 2011). If conflicting evidence in the record would allow reasonable minds to disagree about whether the plaintiff is disabled, the ALJ's decision to deny the application for benefits must be affirmed if the decision is adequately supported. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

The district court must review the entire record, including both evidence that supports the ALJ's conclusions and evidence that detracts from the ALJ's conclusions, but it may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." Id. Indeed, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). Judicial review is limited to the rationales offered by the ALJ. Shauger v. Astrue, 675 F.3d 690, 697 (7th Cir. 2012) (citing SEC v. Chenery Corp., 318 U.S. 80, 93–95 (1943)). The ALJ must follow the Social Security Administration's rulings and regulations in making a determination. Failure to do so requires reversal unless the error is harmless. See Prochaska v. Barnhart, 454 F.3d 731, 736–37 (7th Cir. 2006). A reviewing court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." Burmester v. Berryhill, 920 F.3d 507, 510 (7th Cir. 2019) (quoting Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)). In sum, the district court will uphold a decision so long as the record reasonably supports it and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review. Eichstadt v. Astrue, 534 F.3d 663, 665–66 (7th Cir. 2008).

5

B.    <u>Disability Determination</u>

1.    *Legal Framework*

The Social Security Administration provides "disability insurance benefits and supplemental security income to persons who have a 'disability.'" <u>Barnhart v. Thomas</u>, 540 U.S. 20, 22 (2003) (citing 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B)). To qualify as "disabled," the plaintiff must demonstrate a "physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>Id.</u> at 21–22. The Social Security Act defines "disability" as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

In evaluating a claim for disability benefits, the ALJ must follow a five-step, sequential process. <u>Apke v. Saul</u>, 817 F. App'x 252, 255 (7th Cir. 2020). At step one, "the ALJ must determine whether the claimant was engaged in substantial gainful activity." <u>Id.</u> (citing 20 C.F.R. §§404.1520(b), 416.920(b)). At step two, "the ALJ must assess whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" <u>Id.</u> (citing 20 C.F.R. §§404.1520(c), 416.920(c)). At step three, "the ALJ must evaluate whether the claimant's impairment or combination of

6

impairments is of a severity to meet or medically equal the criteria of an impairment listed in the regulations." Id. (citing 20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). "Before moving onto the next step, the ALJ must also consider the claimant's residual functional capacity, which is assessed by considering all claimed impairments including those that are not severe." Id. (citing 20 C.F.R. §§404.1520(e), 404.1545, 416.920(e), 416.945). At step four, "the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of [his] past relevant work." Id. (citing 20 C.F.R. §§404.1520(f), 416.920(f)). "Finally, the ALJ must assess whether the claimant is able to do any other work by considering [his] residual functional capacity, age, education, and work experience." Id. (citing 20 C.F.R §§404.1520(g), 416.920(g)). If it appears at any step that the claimant is not disabled, the analysis ends. 20 C.F.R. §404.1520(a)(4). The claimant bears the burden of proof at steps one through four; at step five, the burden shifts to the Commissioner. Ghiselli v. Colvin, 837 F.3d 771, 776 (7th Cir. 2016) (citing Butera v. Apfel, 173 F.3d 1049, 1054 (7th Cir. 1999)).

### 2. *The ALJ's October 16, 2018 Decision*

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the February 1, 2016 alleged onset date. Dkt. No. 8-3 at 19. At step two, the ALJ concluded that the plaintiff suffered from several severe impairments; he found that the plaintiff had major depressive disorder, anxiety disorder, and central sleep apnea. Id. The ALJ also found that

7

the plaintiff's vitamin D deficiency was a non-severe impairment. Id. At step

three, the ALJ observed that the plaintiff's medically determinable severe

impairments significantly limited his ability to perform basic work activities as

required by SSR 85-28; however, he determined that none of the impairments

alone, or in combination, met or medically equaled the criteria of listings 12.04

or 12.06. Id.

In determining that the plaintiff had the residual functional to perform a

full range of work at all exertional levels with certain limitations, the ALJ

concluded that the plaintiff was "not as limited as alleged" and that he

"remain[ed] capable of performing work" when coupled with additional

restrictions. Id. at 24. The restrictions included no climbing ladders, ropes or

scaffolds and only occasional exposure to unprotected heights and dangerous

moving machinery. Id. at 21. The ALJ concluded that the plaintiff could not

perform fast-paced production work, and that he should be limited to no public

interaction and only occasional interaction with co-workers and supervisors.

Id. At step four, the ALJ determined that the plaintiff was unable to perform his

past work as a teacher. Id. at 26. At step five, the ALJ noted that the plaintiff's

"ability to work at all exertional levels has been compromised by nonexertional

limitations." Id. at 27. The ALJ concluded that the plaintiff was "capable of

making a successful adjustment to other work that exists in significant

numbers in the national economy," including mail clerk, office clerk and

janitor/cleaner. Id.

8

C. Listed Impairments and Paragraph B Criteria

The plaintiff argued that "[t]he ALJ erred when he found that [the plaintiff] does not have a medically severe impairment or combination of impairments so severe as to prevent substantial gainful activity." Dkt. No. 9 at 10. He asserted that the ALJ ignored medical evidence, improperly weighed opinion evidence and "improperly cherry-picked evidence to support a finding that" that the plaintiff is not disabled. Id. The plaintiff broke this issue into several sub-arguments.

1. *Central sleep apnea and listings 12.04 and 12.06*

The plaintiff stated that in his decision, the ALJ found "no objective medical evidence in the record that [the plaintiff's] central sleep apnea has resulted in complications involving other body systems, including disturbances in mood and/or cognition." Id. at 11. According to the plaintiff, "[b]ased on this conclusion, the ALJ found that [the plaintiff's] central sleep apnea was not medically severe enough to prevent substantial gainful activity. This finding is clearly erroneous." Id. at 11-12. The plaintiff then referenced evidence in the record upon which he believes the ALJ should have relied to conclude that the plaintiff's central sleep apnea resulted in complications to other body systems. Id. at 12-13 (citing Dkt. Nos. 8-12 at 48, 68, 81; 8-13 at 38; 8-14 at 60, 62; 8-16 at 42, 51, 59; 8-17 at 59; 8-18 at 7, 18; 8-19 at 1, 11, 19). He cited licensed social worker Ann McInnis's treatment notes and medical opinions, Dr. Laura Dauenhauer's treatment notes and medical opinions and the plaintiff's subjective reports. Id.

9

If the plaintiff meant to argue that the ALJ failed to find the plaintiff's central sleep apnea severe at step two, the court disagrees. The ALJ concluded that the plaintiff's major depressive disorder, anxiety disorder and central sleep apnea were severe impairments. Dkt. No. 8-3 at 19. Perhaps the plaintiff meant to argue that the ALJ erred at step three. In his discussion of the plaintiff's impairments at step three, the ALJ stated that he "considered [the plaintiff's] central sleep apnea with guidance from 3.00P." Id.  20 C.F.R. pt. 404, subpt. P, App. 1, §3.00P2 provides

> [w]e evaluate the complications of sleep-related breathing disorders under the listings in the affected body system(s). For example, we evaluate chronic pulmonary hypertension due to any cause under 3.09; chronic heart failure under 4.02; and disturbances in mood, cognition, and behavior under 12.02 or another appropriate mental disorders listing.

The ALJ found "no objective medical evidence" that the plaintiff's sleep apnea "resulted in complications involving other body systems, such as chronic pulmonary hypertension, chronic heart failure, or disturbances in mood and/or cognition." Dkt. No. 8-3 at 19. While the plaintiff's opening brief did not identify a particular listing that he believed he met—a fact the Commissioner pointed out in her response brief, dkt. no. 13 at 5—on reply, the plaintiff stated that he "has consistently maintained that he meets listings 12.04 and 12.06," dkt. no. 14 at 2. Perhaps the plaintiff intended to argue that the ALJ should have concluded that the plaintiff's sleep apnea *did* result in complications involving other body systems and should have analyzed whether the plaintiff met or medically equaled the listings 12.04 and 12.06. That is not a basis for remand.

A claimant can qualify as disabled under listings 12.04 and 12.06 if the claimant has one extreme or two marked limitations in (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§12.04B, 12.06B.

Even if the ALJ erred in concluding that the plaintiff's central sleep apnea did not result in complications to the body systems relevant to listings 12.04 and 12.06, and thus, did not determine whether the plaintiff met 12.04 and 12.06 based on those complications, that error is harmless. The ALJ analyzed whether the severity of the plaintiff's *mental* impairments—his major depressive and anxiety disorders—"considered singly and in combination" met or medically equaled the criteria of listings 12.04 and 12.06. Dkt. No. 8-3 at 19. His analysis involved the same consideration of the same four areas of the plaintiff's mental functioning—the paragraph B criteria—as would an analysis of whether complications from the plaintiff's sleep apnea satisfied listings 12.04 and 12.06.

2. *Paragraph B criteria*

The plaintiff's next three sub-arguments challenged the ALJ's consideration of the paragraph B criteria. The plaintiff contended that the ALJ erred in finding only moderate limitations in the first three areas of mental functioning. Dkt. No. 9 at 13-19.

11

a. Understanding, remembering and applying information

The plaintiff argued that "[t]he ALJ improperly cherry-picked medical evidence to find that [the plaintiff's] mental impairments pose only a moderate limitation on his ability to understand, remember and apply information." Id. at 13. The plaintiff stated that in considering the plaintiff's consultative psychological exam, the ALJ "cited all of the tasks that [the plaintiff] performed correctly in the exam, but ignored the areas in which he failed." Id. (citing Dkt. No. 8-3 at 19). In response, the Commissioner argued that substantial evidence supported the ALJ's determination that the plaintiff had only moderate limitations in the paragraph B criteria. Dkt. No. 13 at 6.

The ALJ did not cherry-pick evidence from the plaintiff's consultative exam. On February 14, 2017, psychological consultative examiner Dr. Darrell Hischke examined the plaintiff. Dkt. No. 8-13 at 36. Dr. Hischke's report noted the plaintiff's allegations of severe depression, inability to sleep, exhaustion, issues making decisions and inability to concentrate. Id. He discussed the plaintiff's history as a patient of treating physician Dr. Dauenhauer and licensed social worker Ms. McInnis. Id. at 37. Dr. Hischke noted the plaintiff's prior hospitalizations due to suicidal thoughts. Id. In discussing the plaintiff's mental status, Dr. Hischke described the plaintiff's performance on several clinical tasks:

> The claimant was oriented to person, place, and time. He had no difficulty following the conversation. He was able to count down from 20 at a fair rate with no errors. He spelled world forwards correctly, but misspelled it backwards. He was able to follow a simple three-step task.

12

> On a Digit Span task, the claimant was able to remember three digits forwards and three digits backwards. On a memory task, he remembered three out of three unrelated items for immediate recall and one of three items after a 5 minute delay with interference tasks.
>
> The claimant knew there were seven days in a week and named the four seasons. He knew the sun set in the west. He knew the name of the president of the United States.
>
> The claimant made an error adding two digit numbers. He was able to add and subtract single digit numbers. He was able to multiply and divide single-digit numbers.
>
> The claimant identified the similarity between beer and wine as they are both alcohol. He said the similarity between a piano and guitar is that they are both instruments. He said the similarity between a car and a boat is that they are both vehicles.
>
> When asked what he should do if he finds a stamped, sealed, and addressed envelope lying in the street, he replied "take it to the post office." When I asked what he should do if he is at the movies and is the first person to see smoke and fire, he said he would call somebody. His responses suggest adequate judgment.

Id. at 38-39.

Dr. Hischke's report covered the plaintiff's reports of daily activities and relationships with others. Id. at 39. It recounted an interview with the plaintiff's mother. Id. In a section marked "Assessment," Dr. Hischke explained that the plaintiff

> reported that he has been depressed his whole life. He feels flat and exhausted. He has problems with decision making, concentration, and memory. He has problems in his relationships and sleeping. He is sad constantly. He is in treatment with his psychiatrist and a therapist and has been seeing them for years. He has had four psychiatric hospitalizations between 2008 and 2014. He had difficulty with sleep, appetite level, and feelings of worthlessness and guilt. He has daily suicidal thoughts.

Id. at 40.

13

Dr. Hischke diagnosed the plaintiff with major depressive disorder. Id. He opined that the plaintiff had mild limitations in his ability to understand, remember and carry out instructions, and in his ability to relate to supervisors and coworkers. Id. Dr. Hischke saw moderate limitations in the plaintiff's ability to sustain concentration, persistence and pace, and in his ability to cope with routine work stress and adapt to changes. Id. He concluded that the plaintiff did "not appear to completely incapable of managing his own funds. Id.

In his decision, the ALJ relied on Dr. Hischke's report. Dkt. No. 8-3 at 20, 24 (citing Dkt. No. 8-13 at 36). In discussing the plaintiff's ability to understand, remember, or apply information, the ALJ cited that report and found that

> [t]he medical evidence supports the finding of a moderate rather than a marked limitation in this area. At the consultative examination, the claimant demonstrated fair to good attention and concentration, as well as fair to good cognition and thought process. He was able to follow a simple three-step task. On a digit span task, the claimant was able to remember three digits forward and three digits backwards. On a memory task, the claimant remembered three out of three unrelated items for immediate recall and one of three items after a five-minute delay with interference tasks. . . . The record also reflects no further concerns for deficits in the claimant's abilities to comprehend or use learned information.

Id. at 20 (citing Dkt. No. 8-13 at 36-41).

The plaintiff stressed that during Dr. Hischke's exam, he misspelled "world" backwards, remembered one out of three memory items after a five-minute delay and failed to correctly add two-digit numbers. Dkt. No. 9 at 13-14 (citing Dkt. No. 8-3 at 20). He argued that considering his master's degrees and

14

history of work as a teacher, these lapses show a disability that has resulted in significant cognitive impact. Id.

The Commissioner responded that the ALJ relied on the opinions of state agency psychologists, and that "state-agency reviewing physicians' opinions constitute substantial evidence on the issue of whether a claimant meets or medically equals a listing." Dkt. No. 13 at 6 (citing Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004)). According to the Commissioner, the plaintiff failed to "point to any specific mental listing he believes he meets, or cite to any medical opinion that he meets or equals a mental listing, despite being represented by counsel and thus presumed to have made the best case for benefits." Id. at 7. The Commissioner stressed that while Dr. Dauenhauer and Ms. McInnis opined on the plaintiff's inability to work, neither addressed whether the plaintiff met or medically equaled a listing. Id. Accordingly, she concluded that "the uncontradicted opinions of the state agency psychologists constitute substantial evidence supporting the ALJ's step three conclusion." Id. (citing Filus v. Astrue, 694 F.3d 863, 867 (7th Cir. 2012); Haynes v. Berryhill, No. 17-CV-1187, 2018 WL 5923773, at *6 (E.D. Wis. Nov. 13, 2018)). The Commissioner contended that "[w]here a claimant never presents an opinion that he meets or equals a listing himself, nor asks the ALJ to re-contact the state agency consultants, the appropriate inference is that the claimant 'decided that another expert opinion would not help.'" Id. (quoting Buckhanon ex rel. J.H. v. Astrue, 368 F. App'x 674, 679 (7th Cir. 2010)).

15

While the ALJ did not explicitly discuss the plaintiff's failure to correctly add particular two-digit numbers, the ALJ cited and discussed the source of that information—Dr. Hischke's report. Dkt. No. 8-3 at 20, 24. And the ALJ *did* explicitly cite the other incorrect responses during Dr. Hischke's clinical exam that the plaintiff raises—his misspelling of the word 'world' backwards and his failure to remember two of three memory items after a 5-minute delay. Id. at 20, 25. The plaintiff's argument that the ALJ improperly focused on only certain portions of Dr. Hischke's report overlooks the fact that Dr. Hischke found only a *mild* limitation in the plaintiff's ability to understand, remember, and carry out instructions (the ALJ found a moderate limitation). Dkt. No. 8-13 at 40. This court must read the record and the ALJ's decision as a whole. Harris-Patterson v. Saul, 835 F. App'x 130 (7th Cir. 2021).

Further, the ALJ did not rely solely on Dr. Hischke's report when analyzing the plaintiff's ability to understand, remember and apply information; he addressed state agency reviewing psychologist Dr. Darrell Snyder's opinion that the plaintiff had a moderate limitation in the ability to understand, remember and apply information. Id. A state agency consultant is "highly qualified" and an "expert[] in Social Security disability evaluation." 20 C.F.R. §416.913a(b)(1). Finding them consistent with the medical evidence, the ALJ gave the opinions of Drs. Snyder and Hischke significant weight. Id. The opinions of Drs. Hischke and Snyder are relevant evidence that a reasonable mind could accept as adequate to support the conclusion that the plaintiff has

16

a moderate limitation in his ability to understand, remember and apply information.

The plaintiff maintained that the ALJ ignored other evidence in the record suggesting more than a moderate limitation in understanding, remembering and applying information. According to the plaintiff, reports from therapist Ms. McInnis and treating psychiatrist Dr. Dauenhauer show persistent problems in the plaintiff's ability to understand, remember and apply information. Dkt. No. 9 at 14. He stated, "Ms. McInnis documented that [the plaintiff's] ability to remember and follow instructions has been extremely limited, to the point that he struggles to play games with friends, who have to remind him of the rules of the games and beat him in landslides." Id. (citing Dkt. No. 8-18 at 43). Citing Dr. Dauenhauer's medical source statement, the plaintiff recounted Dauenhauer's opinion that "[the plaintiff's] severe and chronic sleep deprivation affects his ability to process information, and he is extremely limited in his mental functioning as a direct result of his depression and central sleep apnea." Id. (citing Dkt. No. 8-14 at 62-63). The plaintiff contended that the ALJ also overlooked the plaintiff's statements in his hearing testimony, a November 15, 2016 function report that Attorney Hetzner prepared and "changes to his condition that [the plaintiff] documented in the attachment to his appeal." Id. at 14-16. The plaintiff opined that the ALJ improperly placed too much weight on his household activities in assessing his ability to hold a job outside the home. Id. at 16 (citing Craft v. Astrue, 539 F.3d 668, 680 (7th Cir. 2008)).

The court has found that with Dr. Hischke's report and opinion and Dr. Snyder's opinion, the ALJ adequately supported his conclusion regarding the plaintiff's ability to understand, remember and apply information. That the ALJ did not cite Ms. McInnis's finding about the plaintiff's performance in games is not alone a basis for remand. Jelinek, 662 F.3d at 811. The ALJ did not ignore Dr. Dauenhauer's opinion that the plaintiff's mental functioning was extremely limited—rather, the ALJ gave Dr. Dauenhauer's opinion little weight. Dkt. No. 8-3 at 25. The ALJ considered and cited the plaintiff's November 15, 2016 function report. Dkt. No. 8-3 at 22, 23 (citing Dkt. No. 8-7 at 62-70). He concluded, however, that "[t]he medical records fail to substantiate fully the claimant's allegations of disabling mental health symptoms and limitations." Id. at 23.

The ALJ did not ignore the opinions of Dr. Dauenhauer and Ms. McInnis, but rather, gave them little weight. Id. at 25. Further, those opinions do not specifically address any listing and do not contain findings as to a particular level of limitation for the four areas of mental functioning in the paragraph B criteria. See Dkt. No 8-14 at 60-63. Ms. McInnis's report stated that the plaintiff had "experienced a significant decrease in functioning," that the plaintiff's cognition had "decreased in the last five years" and that the plaintiff had suffered "some memory loss." Id. at 60-61. It said that the plaintiff's "depression and central sleep apnea have taken a cumulative toll on his ability to function." Id. at 61. As for Dr. Dauenhauer, while she stated that she found the plaintiff "extremely limited in his mental functioning," she did not tie that

18

finding to any particular area of the paragraph B criteria. Id. at 63. Dr. Dauenhauer's report indicated that the plaintiff's apnea and depression affected his energy and cognition. Id. at 62. The report stated that the plaintiff's condition "impairs his ability to process information, to focus and stay on task and his ability to problem solve." Id. These findings are not inconsistent with a finding of a moderate limitation in understanding, remembering and applying information.

The ALJ did not ignore the plaintiff's allegations of symptoms. In his decision, the ALJ recalled the plaintiff's hearing testimony and other subjective statements as to his mental functioning. Id. at 21-22. However, the ALJ found that the medical record did not "substantiate fully [the plaintiff's] allegations of disabling mental health symptoms and limitations." Id. at 23. It is not this court's role to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." Burmester, 920 F.3d at 510 (quoting Lopez ex rel. Lopez, 336 F.3d at 539).

b.      Interacting with others

The plaintiff argued that the ALJ erred in finding only a moderate limitation in his ability to interact with others "[b]ecause the ALJ relied on [the plaintiff's] brief encounters in non-work settings and ignored medical evidence and [the plaintiff's] own work history."" Id. at 16-17.

In his decision, the ALJ considered the plaintiff's statement in his April 16, 2016 function report that he "has problems getting along with others, as well as problems with authority figures." Dkt. No. 8-3 at 20. The ALJ concluded

19

that the medical evidence supported at most a moderate limitation in the plaintiff's ability to interact with others. Id. (citing Dkt. No. 8-7 at 13-20). He found that Dr. Hischke's report and Dr. Dauenhauer's progress notes showed "that the claimant is cooperative and regularly maintains appropriate eye contact." Id. (citing Dkt. Nos. 8-13 at 36-41; 8-16 at 42; 8-17 at 7, 51; 8-18 at 32; 8-19 at 7). Citing the plaintiff's April 16, 2016 function report, the ALJ noted that the plaintiff "admit[ted] he can engage in activities that take him out into the community, such as shopping." Id. (citing Dkt. No. 8-7 at 13-20). Elsewhere in his decision, the ALJ observed the plaintiff's reports that his impairments affect his ability to get along with others, that he tends to isolate and that he rarely engages in social activity. Id. at 21-22 (citing Dkt. No. 8-7 at 13-20, 62-70). The ALJ also relied on Dr. Snyder's conclusion that the plaintiff had a moderate limitation in the ability to interact with others. Id. at 25. (citing Dkt. No. 8-4 at 43-61).

The plaintiff contended that his "medical records indicate that he experiences extremes regarding his ability to interact with others." Dkt. No. 9 at 17. He cited Ms. McInnis's October 11, 2016 progress notes reflecting the plaintiff's report that he "either wants to isolate or has to be in a crowd or with other people. He doesn't usually feel anything in between." Id. (citing Dkt. No. 8-12 at 78). Citing notes from his hospitalization in 2016, the plaintiff noted his partial eye contact, soft monotone speech and anxiety about returning to work. Id. (citing Dkt. No. 8-9 at 21, 24, 26, 27-28, 29, 32, 34, 36, 40, 42, 47). The plaintiff recounted his November 23, 2015 report to Ms. McInnis that he

could not live up to the expectations of others, that he felt unable to talk to his mother and felt no support from anyone. Id. (citing Dkt. No. 8-12 at 2, 14, 17). He stressed that in another report to Ms. McInnis, "[he] shared an incident in which he got irrationally angry at his niece's four-year-old child, took him outside, put him in a chair and 'got in his face,' which scared the child." Id. (citing Dkt. No. 8-12 at 65). The plaintiff concluded that the ALJ improperly ignored all this evidence. Id. As to his work history, the plaintiff stressed that while he maintained the same job for eleven years prior to the alleged disability onset date, he switched jobs eight times in the thirteen-year period following that date. Id. (citing Dkt. No. 8-7 at 24).

Calling it a "puzzling connection," the plaintiff disputed the ALJ's reliance on the April 16, 2016 function report describing his ability to shop for groceries. Id. at 18 (citing Dkt. No. 8-3 at 20). According to the plaintiff, the report is irrelevant to his ability to interact with others. Id. The plaintiff asserted that elsewhere in the same report, he "stated that he does not spend time with others, rarely goes out, and experiences problems in getting along with his friends and family, and that he tends to isolate himself from others due to his illness." Id. at 19 (citing Dkt. No. 8-7 at 17). The plaintiff asserted that in November 2016, he reported that he was no longer shopping for groceries. Id. (citing Dkt. No. 8-7 at 66). Further, the plaintiff argued that the ALJ's determination of a moderate limitation in ability to interact with others is inconsistent with one of the restrictions in the RFC—"that [the plaintiff] be 'limited to no public interaction and occasional interaction with co-workers and

21

supervisors' in future employment." <u>Id.</u> The plaintiff argued that "[i]mplicit in this limitation is a finding that [the plaintiff] has a marked, and even extreme, limitation on his ability to interact with others." <u>Id.</u>

The ALJ built the requisite logical bridge in concluding that the plaintiff has a moderate limitation in interacting with others. Citing Dr. Hischke's report and Dr. Dauenhauer's progress notes, the ALJ concluded that the record "does not support more than a moderate limitation" in the plaintiff's ability to interact with others. Dkt. No. 8-3 at 20 (citing Dkt. Nos. 8-13 at 36-41; 8-16 at 42; 8-17 at 7, 51; 8-18 at 32; 8-19 at 7). In his discussion of the opinion evidence, the ALJ gave significant weight to the opinions of Drs. Snyder and Hischke. <u>Id.</u> at 25. He recalled Dr. Snyder's opinion that the plaintiff had a moderate limitation in his ability to interact with others, <u>id.</u> (citing Dkt. No. 8-4 at 43-61), and Dr. Hischke's opinion that the plaintiff had a "mildly limited ability to relate to supervisors and co-workers," <u>id.</u> (citing Dkt. No. 8-13 at 36-41). Under <u>Jelinek</u>, the ALJ's decision was not required to discuss the additional evidence raised by the plaintiff if his decision otherwise provided adequate support for his conclusion. <u>Jelinek</u>, 662 F.3d at 811.

As the court already has explained, Dr. Hischke conducted a psychological evaluation of the plaintiff and found a mild limitation in the plaintiff's ability to relate to supervisors and coworkers. Dkt. No. 8-13 at 40. Dr. Dauenhauer's progress notes, cited by the ALJ, reflect mental status examinations showing that the plaintiff (1) was "pleasant, polite and forthcoming with information," (2) had an "okay" mood and euthymic affect, (3)

22

spoke with fluent speech, (4) had organized and logical thoughts, (5) had grossly intact insight and judgment, (6) appeared to have intact cognition "in terms of focus, concentration, short and long-term memory and overall orientation," and (7) had "normal psychomotor activity." Dkt. Nos. 8-16 at 42; 8-17 at 7, 51; 8-18 at 32; 8-19 at 7.

In his evaluation of the plaintiff's social interaction limitations, Dr. Snyder found the plaintiff (1) moderately limited in the ability to interact appropriately with the general public; (2) not significantly limited in the ability to ask simple questions or request assistance; (3) moderately limited in the ability to accept instruction and respond appropriately to criticism from a supervisor; (4) moderately limited in the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and (5) not significantly limited in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Dkt. No. 8-4 at 58. Dr. Snyder opined that the plaintiff "should be able to get along [with] supervisors and coworkers [with] only minor conflicts." Id.

This evidence is adequate to support the conclusion that the plaintiff only had a moderate limitation in interacting with others. That the ALJ cited a function report as evidence of the plaintiff's ability to shop for groceries when a later function report suggested that the plaintiff no longer shopped for groceries is not, in itself, a basis for remand. As the court has already explained, the ALJ did not ignore Ms. McInnis's and Dr. Dauenhauer's opinions, but rather, gave them little weight. And those opinions do not indicate a finding of a mild,

moderate, marked or extreme limitation as to the plaintiff's ability to interact with others. Dkt. No. 8-14 at 60-63. Ms. McInnis's report states that the plaintiff "would often isolate." Id. at 60. It indicates that the plaintiff's "primary social interaction . . . is with his mother." Id. at 61. The report states the plaintiff has "very limited social interaction." Id. Dr. Dauenhauer's report does not mention any finding related to the plaintiff's ability to interact with others. Id. at 62-63.

The restrictions in the ALJ's RFC do not imply an extreme limitation in the plaintiff's ability to interact with others or indicate that the ALJ's decision is "internally inconsistent and erroneous." Dkt. No. 9 at 19. A consideration of the paragraph B criteria is an inquiry distinct from the construction of an RFC. An ALJ "must remember that the limitations in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p. On the other hand, crafting an RFC at steps four and five "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." Id. And when crafting the RFC, an ALJ considers both the claimant's severe and non-severe impairments and incorporates any limitation that the medical record supports. Murphy v. Colvin, 759 F.3d 811, 820 (7th Cir. 2014) (citing Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009)); Yurt, 58 F.3d at 857.

24

c.    Concentration, persistence and pace

As to the ALJ's conclusion that the plaintiff was only moderately limited in concentration, persistence and pace, the plaintiff again asserted that the ALJ cherry-picked the evidence when he relied on the plaintiff's one-hour consultative exam and the April 16, 2016 function report. Dkt. No. 9 at 19.

In finding a moderate limitation, the ALJ cited the plaintiff's contention in his April 16, 2016 function report that he struggled to concentrate and complete tasks. Dkt. No. 8-3 at 20 (citing Dkt. No. 8-7 at 13-23). The ALJ concluded that the record "does not support more than a moderate limitation." Id. He noted that during Dr. Hischke's psychological consultative exam, the plaintiff (1) "had no difficulty following the conversation," (2) "was able to count down from 20 at a fair rate with no errors," and (3) "spelled 'world' forwards correctly, but misspelled it backwards." Id. Citing the April 16, 2016 function report, the ALJ recalled that the plaintiff gave a description of his activities that reflected "some ability to sustain focus and attention, and see a task through to completion," including his report that he was "able to drive, watch TV, read, and manage his own finances." Id. (citing 8-7 at 13-23).

The plaintiff found the ALJ's reliance on the April 16, 2016 function report "puzzling." Dkt. No. 9 at 20. He argued that it is unclear how watching TV relates to concentration, persistence and pace. Id. He said that since the April 16, 2016 function report, he reported to providers and to the Social Security Administration that he "substantially limited his driving due to concerns about the effect of his sleep disorder." Id. (citing Dkt. Nos. 8-7 at 66;

25

8-19 at 11, 19). The plaintiff contended that he also subsequently reported that he stopped cooking due to issues focusing, that he cannot perform any tasks or concentrate for longer than five or ten minutes, and that he "spends only a little time reading anymore." Id. (citing Dkt. No. 8-7 at 63, 65, 67, 68). Id.

The plaintiff cited records from Ms. McInnis and Dr. Dauenhauer that he contended show his deficits in concentration, following instructions, memory, information processing, focus, problem solving. Citing her medical source statement, the plaintiff recounted Ms. McInnis's findings that his concentration and cognition decreased in the past five years, he struggled to concentrate for full fifty-minute therapy sessions and he suffered memory losses after undergoing electroconvulsive therapy in 2017. Id. at 20 (citing Dkt. No. 8-14 at 60-61). He pointed to Ms. McInnis's progress notes from February 5, 2018, when the plaintiff reported finding it "hard to even play games with friends." Id. (citing Dkt. No. 8-18 at 43). The plaintiff cited Dr. Dauenhauer's medical source statement, referencing her conclusions that the plaintiff's sleep deprivation affects his energy levels, ability to process information, focus, stay on task and solve problems. Id. at 20-21 (citing Dkt. No. 8-14 at 62). He stated that Dr. Dauenhauer found him "extremely limited in mental functioning as a direct result of his depression and central sleep apnea." Id. at 21 (citing Dkt. No. 8-14 at 63).

The plaintiff noted his mother's November 17, 2016 report that he cannot focus or follow directions. Id. (citing Dkt. No. 8-7 at 52, 57). Conceding that the ALJ considered and gave some weight to his mother's statements, the plaintiff

26

argued that the ALJ failed to explain why he did not give the plaintiff's mother's statements "at least the same level of weight given to third-party reviewers employed by SSA who have never met [the plaintiff]." Id.

Substantial evidence adequately supported the ALJ's finding of a moderate limitation in the plaintiff's ability to concentrate, persist and maintain pace. Reports from both Drs. Hischke and Snyder reflected a moderate limitation. Dkt. No. 8-13 at 40; Dkt. No. 8-4 at 53. Dr. Snyder further concluded that the plaintiff was (1) not significantly limited in his ability to carry out short and simple instructions, (2) markedly limited in his ability to carry out detailed instructions, (3) moderately limited in his ability to maintain attention and concentration for extended periods, (4) moderately limited in his ability to perform activities under a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) not significantly limited in his ability to sustain an ordinary routine without special supervision, (6) moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them, (7) not significantly limited in his ability to make simple work-related decisions, and (8) moderately limited in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dkt. No. 8-4 at 57. The ALJ gave the opinions of Drs. Snyder and Hischke significant weight, finding them consistent with the record. Dkt. No. 8-3 at 25.

27

The plaintiff pointed to evidence of his subjective complaints, his subjective complaints as the plaintiff's mother recalled them and the treatment notes and opinions of Ms. McInnis and Dr. Dauenhauer. The ALJ considered this evidence, giving it little weight. Dkt. No. 8-3 at 25-26. The reports from Ms. McInnis and Dr. Dauenhauer do not contain a particularized finding as to the plaintiff's ability to concentrate, persist or maintain pace. Dkt. No. 8-14 at 60-63. In her report, Ms. McInnis states that the plaintiff's concentration had "decreased in the past five years" and that she had noticed "an increase in occasions where he struggles to concentrate even in our sessions which only last 50 minutes." Id. at 60. It says the plaintiff experiences frustration when he forgets to do something because of poor concentration. Id. at 61. The report indicates that the plaintiff feared driving in unfamiliar areas and over long distances because of his ability to concentrate. Id. Dr. Dauenhauer's report reflects her opinion that the plaintiff's condition impairs his ability to focus and stay on task. Id. at 62. These opinions are not inconsistent with a moderate limitation in the plaintiff's ability to concentrate, persist and maintain pace.

D.    Weighing the Opinion Evidence

The plaintiff argued that the ALJ erred in his weighing of the opinion evidence. Dkt. No. 9 at 21. The plaintiff contended that "[t]he ALJ improperly weighed the evidence when he found that [the plaintiff] has the residual functional capacity to perform a full range of work with only a few nonexertional limitations." Id. at 21. He asserted that the ALJ "did not follow the proper legal standard when he gave significant weight to the non-treating

28

consultative examiner and paper-record reviewers employed by SSA and little weight to [the plaintiff's] actual, long-term treatment providers." Id. at 24. The Commissioner responded that the ALJ reasonably evaluated the opinion evidence. Dkt. No. 13 at 16.

### 1. *Drs. Chang, Snyder and Hischke*

Finding them "consistent with the medical evidence of record," the ALJ gave significant weight to the opinions of Drs. Douglas Chang (state agency review physician), Snyder and Hischke. Dkt. No. 8-3 at 24-25. The ALJ noted that Dr. Chang "opined that [the plaintiff] does not have any exertional limitations but must avoid concentrated exposure to hazards such as machinery and heights due to daytime somnolence." Id. at 24 (citing Dkt. No. 8-4 at 43-61). The ALJ found that opinion consistent with the record, in which he saw "no conditions that limit [the plaintiff's] physical functioning." Id. at 24-25. The ALJ observed Dr. Snyder's opinion "that [the plaintiff's] mental health conditions cause moderate limitations in the ability to understand, remember, or apply information, moderate limitations in the ability to interact with others, moderate limitations in the ability to concentrate, persist, or maintain pace, and moderate limitations in the ability to adapt or manage oneself." Id. at 25 (citing Dkt. No. 8-4 at 43-61). Regarding Dr. Hischke, the ALJ recalled his opinion that "[the plaintiff] has a mildly limited ability to understand, remember, and carry out instructions; a moderately limited ability to sustain concentration, persistence, and pace; a mildly limited ability to relate to supervisors and co-workers; and a moderately limited ability to cope with

routine work stress and adapt to changes." Id. (citing Dkt. No. 8-13 at 36-41). The ALJ found the opinions of Drs. Snyder and Hischke consistent with the record, citing the results of Dr. Hischke's psychological consultative evaluation of the plaintiff and Dr. Dauenhauer's progress notes. Id. (citing Dkt. No. 8-13 at 36-41; Dkt. No. 8-16 at 42; Dkt. No. 8-17 at 7, 51; Dkt. No. 8-18 at 32; Dkt. No. 8-19 at 7; Dkt. No. 8-12 at 31, 40, 52, 67, 80).

The plaintiff complained that "the ALJ gave 'significant weight' to the opinions of SSA reviewers, whose only contact with [the plaintiff] were through reading the reports of [the plaintiff's] treatment providers from their periodic contacts with him over the past two years." Dkt. No. 9 at 22. He argues that Dr. Hischke "exhibited a lack of knowledge about the profound effects of major depressive disorder" when he asked the plaintiff "questions about whether he was 'sad.'" Id. at 22-23. The plaintiff has not demonstrated that the ALJ erred when he gave significant weight to the opinions of Drs. Chang, Snyder and Hischke, and the ALJ adequately explained his reasons for doing so. Under 20 C.F.R. §404.1513a(b)(1), state agency medical and psychological consultants are "highly qualified physicians" who are "experts in Social Security disability evaluation." Substantial evidence supported the ALJ's decision to give significant weight to Drs. Chang, Snyder and Hischke.

### 2. Dr. Dauenhauer

Turning to the opinion of Dr. Dauenhauer, the plaintiff argued that the ALJ improperly cherry-picked the record "for a reason to discount and devalue" her opinion. Dkt. No. 9 at 23 (citing Cole v. Colvin, 831 F.3d 411, 416 (7th Cir.

2016)). In his decision, the ALJ gave the opinion little weight. Dkt. No. 8-3 at 25. He stated that Dr. Dauenhauer "opined the claimant's sleep apnea affects not only his energy, but his cognition as well, impairing his ability to process information, to focus and stay on task, and to problem solve." Id. He noted Dr. Dauenhauer's statement that "the claimant is extremely limited in mental functioning due to depression and central sleep apnea, and does not believe he is capable of working due to sleep deprivation and cognitive impairments secondary to depression." Id. (citing Dkt. Nos. 8-14 at 62-63; 8-18 at 35-36). However, the ALJ concluded that Dr. Dauenhauer's own treatment records did not support her comments on the plaintiff's decreased functioning. Id. He reasoned that Dr. Dauenhauer's records showed "entirely normal mental status exams with the exception of one session when she noted the claimant's dysphoric mood." Id. And, he found that "the statement that the claimant is not capable of work cannot be given weight as it comments on an issue reserved to the Commissioner." Id.

The plaintiff stressed that "the ALJ pointed to only one indicator—[the plaintiff's] normal mental status exams—to decide that Dr. Daunehauer's opinion regarding her patient's decreased function were not supported by the medical evidence." Dkt. No. 9 at 23. He said that "[s]imilarly, the ALJ noted that in May 2017, after [the plaintiff's] first ECT, he reported feeling 25% better," but "[t]he ALJ ignored later reports that ECT had not helped [the plaintiff]." Id. Regarding Dr. Dauenhauer's opinion that the plaintiff lacked the

ability to work full-time, the plaintiff argued that it "should have been considered and given great weight by the ALJ." Id. at 25-26.

The Commissioner responded that the ALJ's analysis of Dr. Dauenhauer's opinion was reasonable. Dkt. No. 13 at 17. She reasoned that the ALJ adequately supported his decision when he explained that he gave Dr. Dauenhauer's opinion little weight "because the portions that commented on Plaintiff's decreased functioning were not supported by Dr. Dauenhauer's own treatment records, which showed entirely normal mental status exams with the exception of one session when she noted Plaintiff had a dysphoric mood," id. at 17-18; and Dr. Dauenhauer's statement that the plaintiff was not capable of working "commented on an issue reserved to the Commissioner," id. at 18. Regarding cherry-picking, the Commissioner argued that the plaintiff "cites only one piece of evidence that the ALJ purportedly ignored—his report that ECT did not relieve his symptoms." Id. The Commissioner stated that on the contrary, "the ALJ specifically noted that Plaintiff 'reported very little improvement in his symptoms' from ECT." Id.

The ALJ reasonably concluded that Dr. Dauenhauer's own records did not support the portions of her opinion that commented on the plaintiff's mental functioning. Contrary to the plaintiff's argument, the ALJ did not discount Dr. Dauenhauer's opinion because it was not supported by the medical evidence. Rather, the ALJ explained that "the portions of it that comment on [the plaintiff's] decreased functioning are not supported by Dr. Dauenhauer's own treatment records, which show entirely normal mental

32

status exams with the exception of one session when she noted [the plaintiff's] dysphoric mood." Dkt. No. 8-3 at 25. "[A]n ALJ may discount a treating physician's medical opinion that is internally inconsistent or inconsistent with that of a consulting physician, so long as she minimally articulates her rationale." Stevenson v. Colvin, 654 F. App'x 848, 853 (7th Cir. 2016) (citing Skarbek v. Barnhart, 390 F.3d 500, 503–04 (7th Cir. 2004)); see also Pavlicek v. Saul, 994 F.3d 777, 781 (7th Cir. 2021) (citing Schmidt v. Astrue, 496 F.3d 833, 842–43 (7th Cir. 2007) ("An ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes.").

The court has reviewed each of Dr. Dauenhauer's mental status exam notes in the medical record. For example, Dr. Dauenhauer's February 13, 2015 mental status exam notes provide

> [The plaintiff] was casually and appropriately dressed and well groomed, pleasant, polite and forthcoming with information. Speech was fluent and spontaneous, although soft spoken. He was able to maintain appropriate eye contact, was easy to engage interpersonally. He describes his mood today as pretty good. His affect appears predominantly euthymic, but appropriately worried about his fatigue. Thoughts were grossly organized and logical with no evidence of any suicidal or homicidal thoughts or psychosis. Insight and judgment are improved. Cognition appears intact in terms of focus, concentration, short and long-term memory and overall orientation. He has normal psychomotor activity.

Dkt. No. 8-10 at 7-8.

Dr. Dauenhauer noted substantially similar findings on May 6, 2015, id. at 14, September 8, 2015, id. at 29, January 12, 2016, id. at 43, March 23, 2016, id. at 54, April 19, 2016, dkt. no. 8-12 at 40, June 21, 2016, id. at 52,

August 23, 2016, id. at 67, November 1, 2016, id. at 80, January 3, 2017, dkt. no. 8-14 at 10-11, May 2, 2017, dkt. no. 8-16 at 3-4, July 11, 2017, id. at 41-42, August 23, 2017, dkt. no. 8-17 at 6-7, October 18, 2017, id. at 50-51, January 19, 2018, dkt. no. 8-18 at 31-32, and March 20, 2018, dkt. no. 8-19 at 6-7. On April 20, 2018, Dr. Dauenhauer made the same findings as to the plaintiff's casual, appropriate and groomed dress, fluent speech, organized and logical thoughts, no evidence of suicidal or homicidal thoughts or psychosis, intact judgment and insight, intact cognition in terms of focus, concentration, memory and overall orientation, and normal psychomotor activity. Dkt. No. 8-19 at 23-24. At this visit, however, Dr. Dauenhauer noted that the plaintiff "describe[d] his mood as down and his affect appear[ed] dysphoric." Id.

Beyond the mental status exams, the court also has reviewed Dr. Dauenhauer's other findings as she recorded them in progress notes. They do not reflect findings that indicate mental functioning impairments. For example, on February 13, 2015, Dr. Dauenhauer wrote:

> Looks good today in terms of mood, but continues to have fairly significant fatigue. His CBC, TSH, and prior vitamin B12 levels were all normal. He is taking vitamin D. He does not have classic symptoms of sleep apnea, nor is he obese. At this point in time, I do not know to what the fatigue should be attributed but I will boost his modafinil up a bit further and touch base with his primary care physician.

Dkt. No. 8-10 at 8. At the next visit, she noted that the plaintiff "seem[ed] to be doing fairly well given the ongoing stressors and circumstances" and documented the plaintiff's medication regimen. Id. at 15. On September 8, 2015, she noted that the plaintiff "seem[ed] to be doing well." Id. at 30. Dr.

34

Dauenhauer also noted the plaintiff's subjective complaints at each visit; for example, on January 3, 2017, she explained that the plaintiff reported that he was "[s]till having a lot of anxiety. Feels like he is struggling more with putting some of his worry to the side/compartmentalizing. Part of it is anxiety that he's not effectively using the CBT, worries about money and treatment, etc." Dkt. No. 8-14 at 10-11. None of the treatment notes reflect a finding of an impairment to the plaintiff's mental functioning. The ALJ reasonably found Dr. Dauenhauer's opinion inconsistent with her records.

At oral argument, the plaintiff cited the Seventh Circuit's decision in Punzio v. Astrue, 630 F.3d 704 (7th Cir. 2011), among others, for the proposition that it is not unusual for a person with mental health issues to have "normal" treatment days. The plaintiff argued that a treatment day is a snapshot; the fact that a patient may be doing well on the day he sees his treating professional does not mean that he is not disabled. In Punzio, the Seventh Circuit said, "As we have explained before, a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." Id. at 710 (citing Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010); Wilson v. Astrue, 493 F.3d 965, 967-68 (8th Cir. 2007); Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006)). But the ALJ did not limit his analysis to a "single moment." As discussed above, he had years of notes and findings. Those notes and findings were not consistent with a finding of marked or extreme limitation.

35

Relatedly, the plaintiff argued that the ALJ failed to satisfy the "checklist" of factors in 20 C.F.R. §404.1527(c)(2) before giving Dr. Dauenhauer's opinion little weight. Id. He stated that at the time Dr. Dauenhauer wrote her opinion, she had treated the plaintiff for six years. Id. (citing Dkt. No. 8-14 at 62). Stating that "Dr. Dauenhauer has overseen sleep studies and ECT as she searches for a way to address the sleep, depression and anxiety issues that plague [the plaintiff]," the plaintiff asserted that "[i]t is doubtful that Dr. Dauenhauer would have undertaken all of these intervention actions if she did not think that [the plaintiff] suffered from a severe and disabling condition." Id. Accordingly, the plaintiff faulted the ALJ for discarding Dr. Dauenhauer's opinion on the grounds that "on most visits to her office Dr. Dauenhauer's records 'show entirely normal mental status exams.'" Id. The plaintiff asserted that the ALJ's decision failed to show "serious flaws in Dr. Dauenhauer's methodology of evaluating her own patient." Id.

The Commissioner asserted that an explicit discussion of all the §404.1527(c) factors is unnecessary. Dkt. No. 13 at 18 (quoting Collins v. Berryhill, 743 F. App'x 21, 25 (7th Cir. 2018) (collecting cases)). On reply, the plaintiff maintained that "[a]n ALJ must discuss all of the 20 C.F.R. § 404.1527(c) factors to enable a reviewing court to determine whether the ALJ followed the correct methodology in deciding what weight to give an opinion." Dkt. No. 14 at 6 (citing Scrogham v. Colvin, 765 F.3d 685, 697–98 (7th Cir. 2014)).

36

Because the plaintiff filed his application before March 27, 2017, 20 C.F.R. §404.1527 applies. Gerstner v. Berryhill, 879 F.3d 257, 261 (7th Cir. 2018). "A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is consistent with other evidence in the record." Id. (citing 20 C.F.R. §404.1527(c)(1)). However, "an ALJ may discount the opinion of a treating physician . . . if he provides good reasons for doing so." Whitehead v. Saul, 841 F. App'x 976, 981 (7th Cir. 2020) (citing 20 C.F.R. §404.1527(c)(2)). "If 'controlling' weight is not accorded to a treating physician's views, the ALJ must assign it a proper weight." Olivas v. Saul, 799 F. App'x 389, 391 (7th Cir. 2019).

"The regulations provide several factors the ALJ should consider in evaluating a treating physician's opinion: the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." Apke, 817 F. App'x at 256 (citing 20 C.F.R. §404.1527(c)). While an ALJ must consider the regulatory factors in 20 C.F.R. §404.1527(c) when weighing a medical opinion, the ALJ "need only 'minimally articulate' his reasoning." Collins, 743 F. App'x at 25 (citing Elder, 529 F.3d at 415). Indeed, the ALJ "need not explicitly discuss and weigh each factor." Id. (citing Elder, 529 F.3d at 415). If the ALJ considers the proper factors, a court will uphold the decision to discount a treating physician's opinion "so long as the ALJ 'minimally articulate[d]' his reasons." Fair v. Saul, 853 F. App'x 17, 21 (7th Cir.

37

2021) (quoting Elder, 529 F.3d at 415). "[A]n ALJ may discount a treating physician's opinion that is based on only the claimant's subjective complaints." Id. (quoting Bates v. Colvin, 736 F.3d 1093, 1100 (7th Cir. 2013)). "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." Apke, 817 F. App'x at 256 (quoting Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001)).

The ALJ reasonably afford little weight to Dr. Dauenhauer's opinion under §404.1527(c). The ALJ's decision indicates that he was sufficiently aware of the length, nature and extent of Dr. Dauenhauer's treatment relationship with the plaintiff and the services that Dr. Dauenhauer performed at visits. The ALJ noted (1) that Dr. Dauenhauer was the plaintiff's treating psychiatrist, dkt. no. 8-3 at 22; (2) Dr. Dauenhauer's April 20, 2018 progress notes documenting the plaintiff's dysphoric mood, id. (citing dkt. no. 8-19 at 24); (3) "[t]hroughout the period under adjudication, the claimant was under the care of Dr. Dauenhauer," id.; (4) that "[i]n addition to medication and counseling, the claimant underwent electroconvulsive therapy," id.; (5) Dr. Dauenhauer's progress notes throughout May of 2017 considering the plaintiff's improvement, id. (citing Dkt. No. 8-26 at 24; Dkt. No. 8-28 at 20; Dkt. No. 8-32 at 3; Dkt. No. 8-33 at 3; Dkt. No. 8-40 at 25); (6) Dr. Dauenhauer's February 13, 2015 progress notes indicating that "the claimant reported that he was doing ok and that his mood was stable," spoke softly and had an otherwise normal mental status, id. at 23 (citing Dkt. No. 8-12 at 88); (7) Dr.

38

Dauenhauer's January 12, 2016 progress notes indicating a normal mental status exam, id. (citing Dkt. No. 8-12 at 10); (8) Dr. Dauenhauer's progress notes showing normal mental status exams on March 23, 2016, April 19, 2016, August 23, 2016 and November 1. 2016, id. (citing Dkt. No. 8-12 at 31, 40, 67, 80); (9) that in May of 2017, the plaintiff reported to Dr. Dauenhauer "that ECT was helping and that he felt about 25% better, describing his mood as ok," produced a normal mental status exam, dressed casually and appropriately, acted politely, was forthcoming with information, "exhibited euthymic affect and fluent speech, as well as thoughts that were well organized and logical with no evidence of any suicidal or homicidal thoughts or psychosis," id. at 23-24 (citing Dkt. No. 8-16 at 4-5); and (10) Dr. Dauenhauer's progress notes from appointments in July, August and October 2017, and January and March of 2018 that reflected normal mental status exams, id. at 24 (citing Dkt. No. 8-16 at 42; Dkt. No. 8-17 at 7; Dkt. No. 8-17 at 51; Dkt. No. 8-18 at 32; Dkt. No. 8-19 at 7).

The ALJ satisfied §404.1527(c) by considering Dr. Dauenhauer's progress notes from the plaintiff's appointments over a period of years, the plaintiff's subjective reports to Dr. Dauenhauer, the supportability of Dr. Dauenhauer's opinion and the consistency of her opinion with her own treatment records. Further, Dr. Dauenhauer's opinion was inconsistent with the opinions of Drs. Snyder and Hischke, to which the ALJ afforded great weight. And the ALJ did not, as the plaintiff argued, "discard" Dauenhauer's opinions; he gave them little weight. Scrogham v. Colvin, 765 F.3d 685, 697 (7th Cir. 2014) (an ALJ

39

who decides not to give controlling weight to a treating physician's opinion cannot simply discard it but must consider factors in deciding how much weight to give it).

The ALJ also reasonably afforded little weight to Dr. Daunehauer's opinion as to the plaintiff's ability to work. In his decision, the ALJ concluded that Dr. Dauenhauer's "statement that the claimant is not capable of work cannot be given weight as it comments on an issue reserved to the Commissioner." Dkt. No. 8-3 at 25. 20 C.F.R. §404.1527(d)(1) reserves to the Commissioner the question of whether a claimant is able to work; an ALJ does not have to accept the opinion of a treating physician regarding a claimant's ability to work. Loveless v. Colvin, 810 F.3d 502, 507 (7th Cir. 2016) (citing Johansen v. Barnhart, 314 F.3d 283, 287–88 (7th Cir. 2002)).

In arguing that the ALJ should have credited Dr. Dauenhauer's conclusion that the plaintiff is unable to work, the plaintiff reasonrf that "there may be medical conditions that are so totally disabling that a medical expert is able to give an opinion regarding the claimant's ability to work," and that Dr. Dauenhauer "opined that she did not believe that [the plaintiff] 'is capable of working in any capacity.'" Id. at 25 (citing Bauer v. Astrue, 532 F.3d 606, 608 (7th Cir. 2008)). Bauer states that

> [e]ven in a case in which the applicant's medical condition does not meet the requirements for a listed impairment, it may be apparent to medical experts that the patient has a physical or mental condition that prevents him from performing on a full-time basis any jobs having particular requirements; as long the medical experts understand those requirements, they may report or testify that the patient is unable to perform those jobs.

40

Bauer, 532 F.3d at 609 (collecting cases).

Bauer is not a basis for remand. Dr. Dauenhauer stated that "[a]t this time, I do not think [the plaintiff] is capable of working in any capacity due to the extreme sleep deprivation and cognitive impairments secondary to the depression. Barring a significant medical advancement in the treatment of Central Sleep Apnea, I do not anticipate this will change." Dkt. No. 8-14 at 63. Her opinion cites no particular jobs or job requirements that she believed the plaintiff could not perform.

Finally, contrary to the plaintiff's argument, the ALJ did observe that the plaintiff reported very little improvement from his electroconvulsive therapy. Dkt. No. 8-3 at 22.

Even if the ALJ erred in his application of the §404.1527(c) factors, the court would not reverse. An erroneous application of §404.1527(c) is harmless "if the error leaves [the court] convinced that the ALJ would reach the same result on remand." Karr v. Saul, 989 F.3d 508, 513 (7th Cir. 2021) (citing Lambert v. Berryhill, 896 F.3d 768, 776 (7th Cir. 2018)). In making that determination, the court looks to the record to determine whether it can "predict with great confidence what the result on remand will be." Id. quoting (McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011)). If an ALJ applies "faulty logic" in considering the §404.1527(c) factors, reversal is not warranted when substantial evidence supports an independent basis for discounting a treating physician's opinion, including a conflict between a treating physician's opinion and her treatment records. Pavlicek, 994 F.3d at 782. Because the ALJ

41

stood on firm ground in finding Dr. Dauenhauer's opinion and records inconsistent, this issue does not warrant remand.

### 3.  *Ms. McInnis*

A similar analysis applies to the ALJ's consideration of Ms. McInnis's opinion. In his decision, the ALJ observed Ms. McInnis's opinion that "the claimant would not be able to maintain employment." Id. The ALJ found that her opinion "discussed what the claimant reported to her, but did not include clinical findings, functional limitations, or opinions regarding the claimant's functional capacity," and that "it cannot be given weight as it comments on an issue reserved to the Commissioner." Id.

The plaintiff does not contest the ALJ's finding that Ms. McInnis's opinion did not include clinical findings, functional limitations or opinions regarding the claimant's functional capacity. According to the plaintiff, when the ALJ afforded Ms. McInnis's opinion little weight, the ALJ "explained that he gave little weight to 'reports of what the claimant is feeling (as that is subjective to the claimant), but considerable weight to the first-hand observations of the claimant's activities or avoidance of activities, as well as reports of observed changes in the claimant's behavior and routine.'" Id. Dkt. No. 9 at 23. The plaintiff argued that the ALJ "exhibit[ed] a significant misunderstanding of how mental illness is diagnosed and treated" and "impermissibly substituted his own judgment for that of the medical experts." Id. at 23-24 (citing Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)). He asserted that the ALJ further erred by failing to consider "the required checklist of factors provided by 20

42

C.F.R. § 404.1527(d)(2) for determining whether to downgrade the 'great weight' presumption afforded to the opinion of a treating physician." Id. at 24 (citing Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010)). The plaintiff stressed that when Ms. McInnis wrote her opinion, she had treated the plaintiff on a weekly basis for over five years, and that her opinion "was similar to that of SSA in-house reviewer, Dr. Snyder, who concluded [the plaintiff] would have trouble sustaining work." Id. at 26.

The Commissioner responded that the ALJ adequately considered and explained how he weighed Ms. McInnis's opinion. Id. at 20. The Commissioner disagreed with the plaintiff's claim that Dr. Snyder's opinion supported Ms. McInnis's opinion; she argued that "Dr. Snyder's correspondence with the state disability analysis was not his opinion about Plaintiff's capacity for work." Id. at 21-22. Regardless, the Commissioner contended that "even if there was some evidence that could be construed to support Ms. McInnis's opinion, the ALJ's decision should still stand because it is adequately supported." Id. at 22.

Substantial evidence supported the ALJ's decision to assign little weight to Ms. McInnis's opinion. As he did in his discussion of Dr. Dauenhauer and the plaintiff's treatment relationship, the ALJ recalled much of the treatment that Ms. McInnis provided to the plaintiff. Dkt. No. 8-3 at 22, 23, 24, 25. And an ALJ may discount an opinion based on subjective reports rather than objective measurements. Alvarado v. Colvin, 836 F.3d 744, 748 (7th Cir. 2016) (citing White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005)). For the first time on reply, the plaintiff argued that Ms. McInnis "provided extensive opinions on

43

[the plaintiff's] functional limitations, including that his depression and central sleep apnea have taken a cumulative toll on his ability to function and that he would not be able to maintain employment in his current condition." Dkt. No. 14 at 8. A plaintiff waives arguments "by not developing them and by raising them for the first time only in his reply brief." Brown v. Colvin, 661 F. App'x 894, 895 (7th Cir. 2016).

While Ms. McInnis's opinion abstractly speaks to the plaintiff's mental functioning, it does not reflect findings as to functional limitations specific to the paragraph B criteria. The language from the ALJ's decision that the plaintiff argues is improper—his statement that he gave "little weight to the reports of what the claimant [was] feeling (as that is subjective to the claimant), but considerable weight to the first-hand observations of the claimant's activities or avoidance of activities, as well as reports of observed changes in the claimant's behavior and routine"—did not appear in his consideration of Ms. McInnis's opinion. Dkt. No. 8-3 at 26. Rather, that language appears in the ALJ's consideration of the plaintiff's mother's statement. Id. The ALJ was not substituting his judgment for that of the plaintiff's treatment providers.

E.    Plaintiff's RFC and Available Occupations

The ALJ concluded that the plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels." Dkt. No. 8-3 at 21. He concluded, however, that the plaintiff has several nonexertional limitations:

> no climbing ladders, ropes, or scaffolds, and occasional exposure to hazards such as unprotected heights and dangerous moving machinery. The claimant is able to understand and remember simple instructions, and carry out routine and repetitive tasks. He

44

is able to make simple work-related decisions and can adapt to changes within a routine work setting. The claimant is unable to perform fast-paced production work (i.e., assembly line work), but can perform goal-oriented work. He is limited to no public interaction and occasional interaction with co-workers and supervisors.

Id.

"At step four the ALJ determines whether the applicant can perform his past relevant work in light of his RFC." Zellweger v. Saul, 984 F.3d 1251, 1253 (7th Cir. 2021). "[A]t step five, the ALJ decides whether the claimant can do some other work that exists in significant numbers in the national economy." Id. In his decision, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id.

At the plaintiff's hearing, the vocational expert "described the claimant's past work as . . . teacher (DOT 091.117-018), SVP of 7, light exertion level." Dkt. No. 8-3 at 26 (citing Dkt. No. 8-8 at 15). In his decision, the ALJ referenced the VE's testimony:

The vocational expert testified that someone with the same age, education, and work experience as the claimant and with the same residual functional capacity as determined herein would be unable to perform any of the claimant's past jobs. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

Id.

Regarding the plaintiff's limitations, the ALJ concluded that

[t]he claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the

45

extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

Id. at 27.

The VE testified that "given all of these factors," the plaintiff would be able to perform the requirements of

Mail clerk (DOT 209.687-026), SVP of 2, light exertion level, with 57,000 jobs nationally;

Office clerk (DOT 239.567-010), SVP of 2, light exertion level, with 106,000 jobs nationally; and

Janitor/cleaner (DOT 381.687-018), SVP of 2, medium exertion level, with 975,000 jobs nationally.

Id.

The ALJ discussed what he considered to be inconsistencies in the VE's testimony:

Although a portion of the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. Work absences are not addressed in the DOT. For that limitation, the vocational expert relied on her training and experience in the field of vocational rehabilitation.

Id.

The ALJ determined that based on the VE's testimony and considering the plaintiff's age, education, work experience and RFC, the plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy;" accordingly, the ALJ found the plaintiff not disabled. Id.

46

The plaintiff argued that "[t]he available occupations identified by the ALJ do not match the limitations that the ALJ placed on [the plaintiff] for determining his residual functional capacity." Dkt. No. 9 at 26. The plaintiff reasoned that (1) while "one of the skills required for mail clerk is perceptual speed and wrist-finger speed," the ALJ determined that the plaintiff "would not be able to function in a face-paced production job," id. at 26-27 (citing https://occupationalinfo.org/onet/57302.html); (2) "[a]n office clerk may be required to deliver oral or written messages, deliver items to other business establishments, and collect and distribute paperwork between departments," which involves "extensive interaction with others" and conflicts with "the ALJ's limitational findings for [the plaintiff]," id. at 27 (citing https://occupationalinfo.org/23/239567010.html); (3) "the position of janitor/cleaner requires knowledge of mechanical systems and chemical compositions that there is no indication that [the plaintiff] possesses," "exertional efforts that are not consistent with [the plaintiff's] nonexertional limitations" and skills "outside of the plaintiff's abilities due to his impairments," id. (citing https://occupationalinfo.org/onet/67005.html).

According to the Commissioner, "[t]he ALJ relied on the VE's testimony that a person with the same RFC as he ultimately assessed could perform representative jobs including mail clerk, office clerk, and janitor/cleaner." Dkt. No. 13 at 23. Stating that "Plaintiff's counsel did not question the VE on this aspect of her testimony," the Commissioner concludes that "[t]he ALJ was accordingly permitted to rely on it." Id. (citing Liskowitz v. Astrue, 559 F.3d

47

736, 744 (7th Cir. 2009)). Addressing the merits, the Commissioner argued that the plaintiff's argument "that he cannot perform the mail clerk and janitor/cleaner jobs fails because it rests on an improper application of the Occupational Information Network (O*NET);" rather, the Commissioner contended that "[a]n ALJ is only required to resolve conflicts between a VE's testimony and the *Dictionary of Occupational Titles* (DOT)." Id. "With respect to the office clerk position," the Commissioner asserted that the plaintiff's "speculation that the job requires 'extensive interaction with others' is insufficient to establish *any* conflict between the VE's uncontradicted testimony and the DOT, let alone an obvious conflict." Id. at 24 (emphasis in original) (citing Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008)).

Substantial evidence supported the ALJ's determinations at step five. While the plaintiff asserts that "[n]othing prevent[ed] the ALJ from looking at the O*NET," dkt. no. 14 at 11, the plaintiff provides no authority showing a basis for remand when an ALJ declines to review a VE's testimony for inconsistencies with the O*NET. Even if the ALJ erred in failing to consider the O*NET, the error would be harmless. The ALJ did not err in concluding that the plaintiff could perform as a mail clerk because a job requirement of perceptual speed and wrist-finger speed is not incompatible with a limitation regarding a fast-paced production job. The plaintiff's conclusory statement that the position of janitor/cleaner requires knowledge that he doesn't have is insufficient to show error. To the extent that the position of janitor/cleaner requires static strength and stamina, the court concedes those might be

48

exertional efforts inconsistent with the plaintiff's RFC. Any resulting error, however, would be harmless because the plaintiff has not shown that the ALJ erred in finding him capable of performing the other jobs. <u>Cooley v. Berryhill</u>, 738 F. App'x 877, 881 (7th Cir. 2018).

        F.      <u>Consideration of the VE's Testimony</u>

The plaintiff argued that the ALJ failed to account for the VE's complete testimony. Dkt. No. 9 at 27. He reasoned that during the hearing, the plaintiff testified that certain work interruptions and absences were necessary due to his condition, and in response to the ALJ's several hypothetical questions, "the vocational expert testified that employers for the types of unskilled work that would accommodate [the plaintiff's] limitations would not tolerate such work absences." <u>Id.</u> at 27-28. The plaintiff concluded that "the ALJ erred in not considering the fact that [the plaintiff] cannot sustain any work effort." <u>Id.</u> at 29.

According to the Commissioner, the plaintiff's argument "seems to be based on a misunderstanding of the role of the vocational expert;" she says that a VE "is not tasked with assessing a claimant's work-related limitations." Dkt. No. 13 at 27 (citing <u>Ragsdale v. Shalala</u>, 53 F.3d 816, 819 (7th Cir. 1995)). The Commissioner argues that an ALJ needs to include in the RFC and hypothetical question only "those limitations that the ALJ determines have support in the record." <u>Id.</u> (citing <u>Schmidt</u>, 496 F.3d at 845–46). Stating that the plaintiff "points to the VE's testimony that a claimant who needed additional unscheduled breaks, more than one unscheduled absence per

49

month, two three half-hour naps per day, and a flexible work schedule would be unemployable," the Commissioner observed that "the ALJ did not find that such restrictions were warranted." Id. at 26. She concluded that "[t]o the extent that Plaintiff is suggesting that the ALJ had to discuss every hypothetical question asked of the VE, Plaintiff is incorrect;" the Commissioner asserted that "Seventh Circuit precedent does not support the proposition that an ALJ must discuss all of a VE's testimony, even the portions that are based on assumptions that the ALJ rejected." Id. (citing Johansen, 314 F.3d at 288).

Substantial evidence supported the ALJ's decision. That the ALJ both asked the VE hypothetical questions about the plaintiff's alleged limitations and did not ultimately agree with those limitations does not constitute reversible error.

## III. Conclusion

The court **ORDERS** that the final administrative decision of the Commissioner of Social Security, denying the plaintiff's application for disability benefits, is **AFFIRMED**.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 16th day of February, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

50